Jeffrey W. Robinson
Ashburn & Mason, P.C.
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 276-4331
Fax: (907) 277-8235
E-mail: jeffrey@anchorlaw.com

Attorney for Defendant Jeffrey G. Robinson

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNTIED STATES OF AMERICA ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JEFFREY G. ROBINSON ) <br> ) <br> ) <br> Defendant. ) <br> _____) | Case No.: 3:17-cr-00129-SLG-DMS |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Jeffrey G. Robinson, by and through counsel Ashburn & Mason, P.C, submits this memorandum setting forth the factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). Robinson has plead guilty to the penalty provisions codified at 21 U.S.C. § 841(b)(1)(B). In exchange, the Government has agreed to withdraw the 21 U.S.C. § 851 notice and to recommend a

total term of imprisonment of 108 months.

## I. OVERVIEW AND GUIDELINE ANALYSIS

The pre-sentence report ("PSR") assigns Robinson a total offense level of 29, and a total criminal history category of VI. According to these calculations, U.S. Probation sets Robinson's Guideline range at 151 to 188 months. However, in line with the parties' joint-agreement, Probation recommends a total sentence of 108 months pursuant to a 18 U.S.C. § 3553(a) downward variance.[1]

Robinson does not dispute his criminal history category. However, Robinson <u>does</u> dispute his total offense level, which based on the methamphetamine he is responsible for, should be 25. Therefore, Robinson should fall in the 110-137 month range. Other factors, as discussed herein, merit a variance sufficient for the Court to conclude that the U.S.C. § 3553(a) considerations have been satisfied.

### A. Robinson is Responsible for 35.45 grams of actual methamphetamine.

**Robinson is responsible for 28.35 grams from the January 3, 2017 transaction**

As specified in his plea agreement, it is undisputed that on January 3, 2017, Robinson distributed more than 5 grams of actual methamphetamine (specifically, one ounce) to Individual X in Wasilla, Alaska, knowing from previous interactions with Individual X that Individual X would redistribute the methamphetamine.[2] This conduct also satisfies the drug conspiracy elements to which Robinson has plead.[3]

---

[1] Docket 103 at pg. 3.

[2] Dkt. 96 at 4. Individual X is a pseudonym.

[3] Dkt. 96 at 3. *See also* 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B).

**Robinson is responsible for an additional 7.1 grams from the January 24, 2017 transaction.**

On January 24, 2017, Robinson and his co-Defendant Williamson drove in Williamson's vehicle to a post office near the intersection of A Street and 36th Avenue. Robinson was in the passenger seat when the vehicle arrived, and Robinson and Williamson went inside. As they were leaving the post office, law enforcement surrounded the vehicle and took Robinson into custody without incident. Investigators seized two containers from Robinson's person, and ultimately searched the containers pursuant to a search warrant.[4] One container contained a small amount of heroin. The other contained 7.1 grams of actual methamphetamine. Robinson accepts responsibility for this amount.

A separate search warrant covered the search of Williamson's 2011 Toyota Corolla. The search was largely based on the scent detection efforts of a dog named "Bolt." This search yielded an additional 1lb 3.4 ounces of methamphetamine, heroin, and other drug sale items. As the PSR indicates, "[t]he majority of the methamphetamine was found in Williamson's purse and investigators determined that she had obtained the methamphetamine from **her source** of supply."[5] Williamson was extensively interviewed by Troopers after she was detained. She described two sources from whom she obtained large quantities of methamphetamine. Williamson claimed that one source,

---

[4] Robinson unsuccessfully challenged the constitutionality of the search. *See* Docket 48.

[5] Dkt. 103 at pg. 28(emphasis supplied.)

Individual Y, could deliver her a pound of meth and "[a]ll I would have to do is call."[6] (Nearly all of Williamson's interview focused on this one individual.)

An FBI Agent asked Williamson whether Robinson knew Individual Y. Williamson responded "Can he get to him? No."[7] She told the Agent that Robinson was around Individual Y in "the very beginning...but not really since" and that Individual Y would be "shocked" if Robinson (or anyone else) was in the car with her to perform a drug transaction.[8] Should the quantity dispute proceed to an evidentiary hearing, Robinson would corroborate what is already known to Williamson and Investigators – that Robinson intentionally chose not to deal with Individual Y based on his illicit relationship with Williamson, and that Robinson had no part in Williamson's unrelated criminal activity on the 24th.

In the case of a jointly undertaken criminal activity, relevant conduct would cover "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity" that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.[9] Because there is no evidence to corroborate the notion that Robinson was aware of Williamson's intent to

---

[6] Williamson Transcript Part I at 45: 20. To protect Williamson, Individual Y is a pseudonym.

[7] Williamson Transcript Part II at 67: 22-25.

[8] *Id*. at 68.

[9] USSG § 1B.3(a)(1)(B).

possess the methamphetamine independently supplied to her by Individual Y and/or that he agreed with Williamson to attempt to distribute this methamphetamine, the Court should find that the disputed 473.1 grams from the vehicle should not be assigned to Robinson. Accordingly, Robinson's total offense level should be adjusted to 25.

### B. Robinson contests Probation's 1488 gang designation

The PSR indicates that Robinson "is a verified member of the 1488 gang."[10] Robinson does not dispute that he has a tattoo of the 1488 "patch." However, Paragraph 5's language is misleading in that it suggests that Robinson "currently" participates in the gang. This statement is inaccurate. Probation relied on DOC representative David Knapp in making this assertion. To date, counsel has no information regarding the information Knapp relied upon to designate Robinson a member of the gang at issue. Accordingly, Robinson maintains his objection to the gang designation.

## II. ADDITIONAL SENTENCING CONSIDERATIONS

Although the Court should consult the appropriate sentencing guideline range when fashioning a sentence,[11] the Court must render its final determination concerning an appropriate sentence in light of the factors outlined in 18 U.S.C. § 3553(a), which include "the nature and circumstances of the offense and the history and characteristics of the defendant."

Post-*Booker* opinions make clear that, although a sentencing court must "give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence

---

[10] Dkt. 103 at ¶5.

[11] *United States v. Booker*, 503 U.S. 220 (2005).

in light of other statutory concerns as well."[12] District courts have routinely varied from guideline sentences based on disagreements with the guidelines, including policy disagreements, which are addressed *infra*.[13]

Pursuant to 18 U.S.C. § 3553(a), the following factors, taken as a whole, should be considered by the Court in determining a defendant's sentence:[14]

> Factor 1) The nature and circumstances of the offense and history and characteristics of the defendant;
> Factor 2) the need for the sentence imposed to: A) reflect the seriousness of the offense and promote respect for the law, and to provide just punishment for the offense, B) to afford adequate deterrence to criminal conduct, C) to protect the public from further crimes of the defendant, and D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> Factor 3) the kinds of sentences available;
> Factor 4) the kinds of sentence and sentencing range set forth in the guidelines;
> Factor 5) the policy statements set forth in the guidelines;
> Factor 6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> Factor 7) the need to provide restitution to any victims of the offense.

Pursuant to Factor 1, Robinson was abandoned by his mother when he was ten years old, and barely communicated with her until she passed away in 2014. Robinson's two siblings have also been addicted to substances throughout the course of their lives. To their credit, Robinson's sisters have turned their lives around and are now both sober.

---

[12] *Kimborough v. United States*, 552 U.S. 85, 101, 128 S.Ct. 558 (2007).

[13] *See Spears v. United States,* 555. U.S. 261, 265-66, 129 S. Ct. 840, 172 L.Ed.2d 596 (2009); *Kimbrough v. United States*, 552 U.S. 85, 109-10, 128 S. Ct. 558, 169 L.Ed.2d 481 (2007); *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L.Ed.2d 445 (2007); *Rita v. United States*, 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007).

[14] Some of the 18 U.S.C. § 3553(a) factors are inapplicable to Robinson and will not be discussed herein.

Robinson has started formulating a release plan to be closer to his sisters in Washington upon his release from incarceration.

Robinson has a lengthy criminal history, but his offenses of conviction are either driving or drug related.[15] (His theft and shoplifting convictions appear to be drug related.) Robinson does not have any high-level drug distribution convictions, nor has he been convicted of assault. He has never been sentenced to federal term of incarceration. Robinson's lengthiest sentence was three years. He will do nearly three times that amount should the Court accept the sentencing recommendation in this case. Despite his failures, Robinson is loved by his family[16]; he has worked intermittently, and he now sees the "end of the road" in light of the conduct that has predominated this phase of his life.

Individual deterrence will necessarily be achieved via this lengthy sentence, given the moderate amount of time that Robinson has been incarcerated in the past. Robinson has never been subjected to a term of imprisonment as lengthy as that contemplated by the advisory guideline range.[17] Because he has rehabilitative potential, a sentencing referral to RDAP[18], followed by a 4 year period of supervised release is appropriate.[19] The period of supervised release will deter Robinson from engaging in the desperate, but risky behavior that resulted in the instant conviction.

---

[15] Dkt. 103 at pgs. 12-15.

[16] Included in this filing are letters or support from various family members.

[17] 18 U.S.C. § 3553(a)(2)(B).

[18] Robinson would obviously benefit from a substance abuse evaluation and should participate in any recommended treatment while incarcerated and/or during his time of supervised release. *See* 18 U.S.C. § 3553(a)(2)(D). Robinson thus asks the Court for an RDAP recommendation.

[19] Pursuant to Factor 7, Restitution is not relevant to this sentence.

## III.    POLICY FACTORS FAVOR A DOWNWARD VARIANCE

Policy factors additionally dictate a downward variance. District Court Judge Mark W. Bennet of the United States District Court, N.D., Iowa, Western District, recently granted a downward variance based on policy disagreements with the purity focus of the methamphetamine Guidelines in *United States v. Nawanna,* No. CR 17-4019-MWB, 2018 WL 2021350 (N.D. Iowa May 1, 2018). Judge Bennett's opinion followed recent opinions in *United States v. Hartle,* No. 4:16-CV-00233-BLW, 2017 WL 2608221, at *1 (D. Idaho June 15, 2017) (finding that the methamphetamine Guidelines produce advisory sentences that fail to achieve the § 3553(a) objectives, and expressing the judge's personal intention to "routinely consider granting a variance in cases where drug testing is completed") and *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249 (D.N.M. 2017) (noting the Court's policy disagreement with the methamphetamine Guidelines and finding that the Commission asks courts to sentence defendants to harsher sentences than they deserve for purely arbitrary reasons, which "is not a result that comports with justice.").

The thrust of Judge Bennet's policy disagreement boils down to the idea that there exists no empirical basis for the current "10-to-1" ratio, which, of course, is borrowed from Section 841(b)(1). Application Note 27(c) to 2D1.1 appears to provide the only explanation for the 10-to-1 ratio in the guidelines. That note reflects the Sentencing Commission's view that a defendant who has access to pure drugs is closer to the source and thus occupies a higher level in the conspiracy. But, virtually all meth seized and

tested today, including the meth in Robinson's case, is highly pure, and thus the Commission's view is objectively wrong. Because virtually all cases now involve meth actual or "ice," it makes little sense to enhance virtually all defendants' sentences on this basis. Echoing Judge Brack of the District of New Mexico in *Ibarra-Sandavol*, Judge Bennet concluded that the "methamphetamine Guidelines are based on the flawed assumption that methamphetamine purity is a proxy for role in the offense, which, like [Judge Brack], I find 'is divorced from reality.'"[20] Therefore, even though Nawanna's advisory Guidelines range was 360 months to life, Judge Bennet imposed a 132 month sentence, finding that the former range "would be greater than necessary to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a)."[21]

The thrust of Robinson's conviction involves a single hand-to-hand transaction of one ounce of methamphetamine to a drug user who he believed would then distribute that amount to others. Robinson is not near the "source" of the distribution chain. Had Robinson's transaction involved "unpure" methamphetamine, his sentence would be in the 70-87 month range. Instead, Robinson will serve several years over the maximum point of that range. Accordingly, a variance is appropriate to establish the 108 month sentence should the Court agree with Probation's Guideline range. A 2 month variance is appropriate if the Court concurs in Robinson's assessment of the appropriate range. (His sentence would come down from 110 to 108 months.)

---

[20] *United States v. Nawanna*, No. CR 17-4019-MWB, 2018 WL 2021350, at *11 (N.D. Iowa May 1, 2018).

[21] *Id.*

## IV. CONCLUSION

For the reasons contained in this sentencing memorandum and further reserved for argument, Robinson requests the Court sentence him to a **108 month term of imprisonment, followed by a four-year term of supervised release.**

This sentence would reflect the seriousness of the instant offense. The sentence would be sufficient but not greater than necessary to meet the applicable statutory directives.[22]

                                      ASHBURN & MASON, P.C.
                                      Attorneys for Defendant

DATED: December 11, 2018            By:   s/ Jeffrey W. Robinson
                                                                   JEFFREY W. ROBINSON
                                                                   Alaska Bar No. 0805038

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 10, 2018, a copy of the foregoing was served electronically through the CM/ECF system on the following:

Stephan A. Collins
Assistant U.S. Attorney
222 W. 7th Avenue, #9, Room 253
Anchorage, AK 99513-7567

ASHBURN & MASON, P.C.

By:    s/Jeffrey W. Robinson
        JEFFREY W. ROBINSON

---

[22] 18 U.S.C. § 3553(a)(2)(C).